# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| MICHAEL ALLEN BROWNING, | ) |
| --- | --- |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) Case No. 07-CV-16-TCK-PJC |
| RANDALL G. WORKMAN, Warden, | ) |
| Oklahoma State Penitentiary, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

This matter comes before the Court on the Amended Petition for Writ of Habeas Corpus (Dkt. # 79) filed by Oklahoma death row inmate Michael Allen Browning, pursuant to 28 U.S.C. § 2254.[1] Browning, who appears through counsel, challenges his conviction and sentencing in Tulsa County District Court, Case No. CF-01-1098. Respondent filed a Response (Dkt. # 83), and Browning filed a Reply to the Response (Dkt. # 88). Respondent also submitted a Supplemental Authority Brief regarding Browning's ineffective assistance of counsel claims. Dkt. # 97. In addition, the parties submitted supplemental sealed briefing pursuant to this Court's sealed order dated May 2, 2011. See Dkt. ## 102, 103, 106. The state court record has been produced.[2] The Court considered all of these materials in reaching its decision.

The Court finds the Amended Petition should be conditionally granted on Browning's

---

[1] Because the Amended Petition replaces and supersedes the original Petition (Dkt. # 32), the original Petition shall be declared moot.

[2] References to documents and pleadings from these proceedings shall be referred to by docket number, where feasible (Dkt. #__); references to the trial transcript shall be referred to as "Tr. Vol. __ at ___"; references to other hearings held by the trial court shall be referred to as "Tr. [Date] at __." The original state court record shall be identified as "O.R. ___."

seventh ground for relief for the reasons stated herein. Because the Court finds that the writ should issue based on the seventh ground, the Court declines to address the numerous other issues raised by Browning.

## BACKGROUND

**I.      Factual Background**

Browning was convicted of attempting to kill his pregnant ex-girlfriend, Cenessa Tackett; killing Ms. Tackett's parents; and setting fire to their home. Browning's defense strategy at trial, which he maintains in these habeas corpus proceedings, is that he did not commit the crimes for which he was convicted but, rather, his co-defendant Shane Pethel planned and committed these acts with Ms. Tackett, who possessed a financial motive to commit the crimes. See Browning v. State, 134 P.3d 816, 831 (Okla. Crim. App. 2006); see also Amended Petition, Dkt. # 79 at 67. Although there were other investigative and fact witnesses, Ms. Tackett was the key witness and sole eyewitness in the prosecution's case against Browning. Physical evidence linking Browning to the crimes was virtually non-existent.[3] Ms. Tackett was the only witness who placed Browning at the scene of the crimes or testified about his specific involvement in the crimes.

---

[3] The physical evidence presented by the prosecution at trial to link Browning to the crimes consisted of a roll of duct tape (the victims of the crimes were restrained with duct tape) and a can of Zippo lighter fluid (the prosecution's expert testified that some type of accelerant was used in setting fire to the victims' home). Both items were retrieved from Browning's home. Since trial, it has come to light that the prosecution suppressed a report excluding the duct tape found at Browning's home as the duct tape used in the crimes. See Ground Two of the Amended Petition, Dkt. # 79 at 79, 84-89. Browning also disputes the validity of the testing showing the presence of an accelerant. See id. at 79, 84-89, 95-100.

2

## II.     Procedural History

Browning challenges his conviction and sentencing in Tulsa County District Court, Case No. CF-2001-1098. In that case, he was tried by jury and convicted of two counts of first degree murder (Counts I and II), one count of shooting with intent to kill (Count III), one count of arson in the first degree (Count IV), and one count of robbery with a firearm (Count V). The jury found the following two aggravating circumstances in the sentencing phase of Browning's trial: (1) the murders posed a great risk of death to another person, and (2) the murders were especially heinous, atrocious, and cruel. The jury recommended death sentences on the first degree murder charges. In accordance with the jury's recommendation, the Honorable Rebecca Brett Nightingale sentenced Browning to two sentences of death (Counts I and II); life imprisonment (Count III); thirty-five (35) years imprisonment and a $25,000 fine (Count IV); and life imprisonment (Count V).[4]

On direct appeal, Browning raised fourteen propositions of error. The Oklahoma Court of Criminal Appeals ("OCCA") affirmed his convictions and sentences on Counts I-III (murder and shooting with intent to kill) but dismissed Counts IV and V (arson and robbery). Browning, 134 P.3d 816.

Browning subsequently filed his first application for post conviction relief with the OCCA, Case No. PCD-2003-669, which was denied in a published decision. Browning v. State, 144 P.3d 155 (Okla. Crim. App. 2006). A Petition for Writ of Certiorari was timely filed with the U.S. Supreme Court and denied October 10, 2006. Browning v. Oklahoma, 549 U.S. 963 (2006).

---

[4] Four days after the conclusion of Browning's trial, Pethel, whose trial was severed from Browning's, entered guilty pleas to the charges. Pursuant to a plea agreement with the State, Pethel was spared the death penalty, but received sentences of life without the possibility of parole on the murder convictions. Tr. 02/11/03 at 3, 17-18.

On January 3, 2007, Browning initiated this habeas corpus proceeding with the filing of a Motion for Appointment of Counsel (Dkt. # 1). Browning's original Petition (Dkt. # 32) was filed September 25, 2007, challenging Browning's judgment and sentences.

On November 20, 2007, Browning filed his second application for post-conviction relief and a motion for evidentiary hearing with the OCCA, Case No. PCD-2007-1143, presenting unexhausted claims that had not been previously presented to the state court. On May 23, 2008, the OCCA in an unpublished order denied all requested relief, including the request for an evidentiary hearing, finding that the claims presented were procedurally barred. See Order, PCD-2007-1143.

Browning filed his Amended Petition (Dkt. # 79) with the Court on August 26, 2008, identifying eleven (11) grounds for relief. Pertinent to this Court's order is ground seven which states: "The Trial Court's Refusal to Order the Disclosure of Cenessa Tackett's Mental Health Records Denied Petitioner the Right to Present a Defense and Cross-examine Cenessa Tackett Violated the Fifth, Sixth and Fourteenth Amendments."

## STANDARD OF REVIEW - AEDPA

This Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). Snow v. Sirmons, 474 F.3d 693, 696 (10th Cir. 2007). Under the AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. Alverson v. Workman, 595 F.3d 1142, 1146 (10th Cir. 2010) (citing Snow, 474 F.3d at 696). When a state court has adjudicated the merits of a claim, a petitioner may obtain federal habeas relief only if the state decision (1) "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States"[5] or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).

The first step in applying § 2254(d)(1) is to assess whether there was clearly established federal law at the time the conviction became final, as set forth in the holdings of the Supreme Court. House v. Hatch, 527 F.3d 1010, 1016-17 (10th Cir. 2008). If clearly established federal law exists, the Court must then consider whether the state court decision was contrary to or involved an unreasonable application of Supreme Court law. Id. at 1018. When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). It is not necessary, however, that the state court cite to controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court law. Early v. Packer, 537 U.S. 3, 8 (2002). Further, the Supreme Court has recently held that "review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, -- U.S. --, 131 S.Ct. 1388, 1398 (2011). Thus, "evidence introduced in federal court has no bearing on §2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of §2254(d)(1) on the record that was before that state court." Id. at 1400 (footnote omitted). "A state court's determination that a claim lacks merit

---

[5] A legal principle is "clearly established" within the meaning of this provision only when it is embodied in a holding of the Supreme Court. See Carey v. Musladin, 549 U.S. 70, 74 (2006).

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, -- U.S. --, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Application of § 2254(d)(2) requires the Court to review any factual findings of the state court to ascertain whether they were unreasonable in light of the evidence presented at trial. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, -- U.S. --, 130 S.Ct. 841, 849 (2010) (citing Williams, 529 U.S. at 410). The "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## GROUND VII: FAILURE TO DISCLOSE MENTAL HEALTH RECORDS

In his seventh ground for relief, Browning argues that the trial court's refusal to order disclosure of Ms. Tackett's mental health records, which were in the possession of the prosecution, deprived him of his constitutional rights to access exculpatory evidence under the Due Process Clause of the Fourteenth Amendment and Brady v. Maryland, 373 U.S. 83 (1963), and denied him the rights to cross-examination and confrontation under the Sixth Amendment.[6] Dkt. # 79 at 225. Respondent contends that the OCCA's determination that "nothing material to either guilt or punishment" was contained in Ms. Tackett's mental health records was reasonable.

---

[6] Because the Court grants relief on Browning's due process claim, it will not analyze Browning's claim that he was denied his right to cross-examination and confrontation under the Sixth Amendment in this opinion. However, the Court notes that the plurality opinion in Pennsylvania v. Ritchie, 480 U.S. 39, 51-53 (1987), rejected a similar claim. ("The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony.").

**I.     Prior Proceedings Relating to the Suppressed Mental Health Records**

On March 25, 2002, Browning filed a motion to compel production of Cenessa Tackett's mental health records in the state trial court. O.R. Vol III at 505-507. Hearings were held on his motion on April 11 and April 25, 2002. In the course of these hearings, the trial court denied Browning's motion for the production of all of Ms. Tackett's mental health records on the ground that they were privileged under the psychotherapist-patient privilege found at Okla. Stat. tit. 12, § 2503. Tr. 4/11/02 at 26-27. The court directed that documents in the State's possession be turned over to the trial court for inspection to determine if they contained any exculpatory evidence. Id. at 28. The prosecution then disclosed, in an ex parte hearing, that certain records concerning Ms. Tackett's mental health and treatment had been provided to the District Attorney's office by her attorney, Cynthia Garrett. According to the prosecutor, these consisted of records concerning a mental health examination of Ms. Tackett in Indiana, where she had resided with her aunt in the months after the homicide. Tr. 4/11/02 at 42-43. The prosecutor claimed he did not know the content of these records except for a two sentence summary, which he announced he would not disclose. Id. at 43-44. Later, the prosecutor advised the trial court that he had received a letter from Ms. Garrett explaining that these documents had been sent to the District Attorney's office in error and that she wanted them back. Tr. 4/25/02 at 9. The trial court determined there had been no waiver of the privilege as a result of the purportedly inadvertent disclosure of these medical records. Id. at 14. The prosecutor turned the records over to the trial court for review, and the court announced after examining the records that they contained no exculpatory material that must be disclosed, absent a waiver from Ms. Tackett. The trial court never released the mental health records to the defense, but left them in the record under seal as State's In Camera Exhibit 1. Tr. 4/25/02 at

12-14, 16.

Regarding disclosure of Ms. Tackett's sealed mental health records, the OCCA determined in Browning's direct appeal:

> This Court has reviewed the sealed material to determine whether it contained evidence favorable to Browning. We determine that the documents contain nothing material either to guilt or punishment. There is no reasonable probability that, had this evidence been disclosed, the result of the trial would have been different. As there was no waiver, and the sealed material contains nothing favorable to the defendant, this proposition is denied.

Browning, 134 P.3d at 837 (footnotes omitted) (citing Kyles v. Whitley, 514 U.S. 419, 432-33 (1995); United States v. Bagley, 473 U.S. 667, 682 (1985); Brady, 373 U.S. at 86).

In these habeas proceedings, in addition to his request for habeas relief, Browning urged the Court to apply the general remedy under Pennsylvania v. Ritchie, 480 U.S. 39 (1987) (plurality opinion), and review Ms. Tackett's sealed mental health records in camera to determine if they contain exculpatory or impeachment evidence. If the records contained such evidence, Browning argued that the Court should then release the sealed material to counsel for the parties. See Dkt. # 79 at 232. Neither Browning nor his present or previous counsel had viewed these records at the time he filed his Habeas Petition. Id. at 228.

The Court reviewed the sealed mental health records at issue (State's In Camera Exhibit 1) and found that the information contained therein is, and was, favorable to Browning and material to guilt or punishment. See Dkt. # 100 at 8 (filed under seal) (citing Ritchie, 480 U.S. at 60 and Bagley, 473 U.S. at 674-76). As a result, the Court ordered that State's In Camera Exhibit 1 be disclosed to counsel for the parties. See Dkt. ## 100, 101 (filed under seal). The Court directed the parties to file supplemental briefing regarding whether the OCCA's determination of this issue was unreasonable under 28 U.S.C. § 2254. See Dkt. ## 102, 103, 106 (filed under seal). Because the

records contain sensitive and confidential mental health information regarding Ms. Tackett, the Court found that Ms. Tackett's legally protected privacy interest outweighs the public interest in disclosure of these records at this time and directed that the Court's order, the records, and all subsequent filings that make specific reference to portions of the records be filed under seal and protected from public disclosure.[7] Those documents will remain under seal. For the purposes of this opinion, the Court will make only general reference to the contents of the mental health records as necessary, as well as the parties' arguments from their sealed supplemental briefing, and the Court's prior order filed under seal. The Court incorporates the content of its sealed May 2, 2011 order (Dkt. # 100) herein by reference.

## II.     Analysis

Browning's claim that he was denied access to favorable evidence in violation of his federal constitutional rights is appropriately analyzed under the Due Process Clause of the Fourteenth Amendment. See Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987). Under Supreme Court precedent, the government is obliged to disclose "evidence in its possession that is both favorable to the accused and material to guilt or punishment." Id. at 57; see also United States v. Bagley, 473 U.S. 667, 675-76 (1985); Brady v. Maryland, 373 U.S. 83, 87 (1963). Ritchie holds that due process entitles a criminal defendant to have a witness's potentially privileged records reviewed in camera to determine whether they contain material exculpatory or impeachment evidence which must be

---

[7]     In its sealed order dated May 2, 2011, the Court considered applicable privacy law, including the Oklahoma patient-psychotherapist privilege found at Okla. Stat. tit. 12, § 2503 and determined that those laws and policies would permit the Court to disclose the mental health records at issue pursuant to Ritchie if they contained material evidence. See Dkt. # 100 at 7-8. The parties' supplemental briefs contain no further argument regarding the privacy and confidentiality of the sealed mental health records. See Dkt. ## 102, 103. Thus, the Court will not discuss the privacy issue any further.

provided to the defendant. 480 U.S. at 57-58. The asserted privilege in Ritchie was not absolute but contained exceptions that might allow for disclosure of material evidence in certain situations. Id.[8] The Court stated, "Although we recognize that the public interest in protecting this type of sensitive information is strong, we do not agree that this interest necessarily prevents disclosure in all circumstances." Id. at 57. Any such "information material to the fairness of the trial" must be disclosed to the defense. Id. at 60.

"[E]vidence is material . . . if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Ritchie, 480 U.S. at 57 (quotation and alteration omitted). A defendant need not show that the withheld records would have "resulted ultimately in [his] acquittal." Kyles, 514 U.S. at 434. "Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Strickler v. Greene, 527 U.S. 263, 290 (1999) (quotation omitted). This materiality test applies with equal force to both exculpatory and impeachment evidence. Bagley, 473 U.S. at 676; see also United States v. Abello-Silva, 948 F.2d 1168, 1179 (10th Cir. 1991) ("Impeachment evidence merits the same constitutional treatment as exculpatory evidence.") (quotation omitted). Impeachment evidence implicates a criminal defendant's due process rights when the reliability of a given witness may be determinative of the defendant's guilt or innocence. Giglio v. United States, 405 U.S. 150, 154 (1972).

In United States v. Robinson, 583 F.3d 1265, 1270-74 (10th Cir. 2009), the Tenth Circuit,

---

[8] The Ritchie Court did not reach the issue of whether the result of that case would be different if the state-law privilege at issue was absolute. See Ritchie, 480 U.S. at 58 n.14.

relying on Ritchie, 480 U.S. 39, ruled that, in a felon in possession of a firearm prosecution, the defendant's due process rights were violated when the district court, after in camera review of the records, denied him access to a confidential informant's mental health records. Such records outlined the informant's extensive illegal drug use, mental health condition, and use of prescription drugs at the time of trial. Id. The circuit court ruled that the records contained information material to the defendant's defense, because the informant was the only witness who testified directly to the defendant's possession, the informant arranged the purchase of the firearm and negotiated the price, the informant was the only person who identified the defendant, and the evidence contradicted the informant's credibility and testimony that he was not regularly using illegal drugs. Id.

In United States v. Butt, 955 F.2d 77, 82-83 (1st Cir. 1992), cited with approval by the Tenth Circuit in Robinson and in United States v. Hargrove, 382 Fed. Appx. 765, 776 (10th Cir. 2010), the First Circuit noted "federal courts appear to have found mental instability relevant to credibility only where, during the time-frame of the events testified to, the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness, such as schizophrenia, that dramatically impaired her ability to perceive and tell the truth." Butt, 955 F.2d at 82-83; see also Hargrove, 382 Fed. Appx. at 776 ("[E]vidence regarding mental illness is relevant only when it may reasonably cast doubt on the ability or willingness of a witness to tell the truth.") (citation omitted). Similarly, in Robinson, the Tenth Circuit determined that the diagnoses that the witness suffered from auditory hallucinations and possible psychosis bore on the witness's "ability to perceive or to recall events or to testify accurately." 583 F.3d at 1272 (citing Butt, 955 F.2d at 82). The Eleventh Circuit also reached a similar conclusion in United States v. Lindstrom:

> Certain forms of mental disorder have high probative value on the issue of credibility. . . . Mental illness may tend to produce bias in a witness' testimony. A

> psychotic's veracity may be impaired by lack of capacity to observe, correlate or recollect actual events. A paranoid person may interpret a reality skewed by suspicions, antipathies or fantasies. A schizophrenic may have difficulty distinguishing fact from fantasy and may have his memory distorted by delusions, hallucinations and paranoid thinking. A paranoid schizophrenic, though he may appear normal and his judgment on matters outside his delusional system may remain intact, may harbor delusions of grandeur or persecution that grossly distort his reactions to events.

698 F.2d 1154, 1160 (11th Cir. 1983).

As discussed above, this Court reviewed the sealed mental health records at issue and found that the information contained therein is, and was, favorable to Browning and material to guilt or punishment. See Ritchie, 480 U.S. at 60; Bagley, 473 U.S. at 674-76. However, to prevail on his habeas claim, Browning must establish more than just the fact that the OCCA's decision was incorrect. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). As explained above, "the 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Id. at 520 (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). In Richter, the Supreme Court held that "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or, as [in Richter's case], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." 131 S.Ct. at 786.

The OCCA, in its opinion in Browning's direct appeal, identified the correct legal principles by citing Kyles, 514 U.S. at 432-33, Bagley, 473 U.S. at 682, and Brady, 373 U.S. at 86. The OCCA applied those correct legal principles to reach two primary conclusions with regard to Browning's claim: (1) the sealed materials contained nothing favorable to Browning, and (2) the materials

12

contained nothing material either to guilt or punishment. See Browning, 134 P.3d at 837. The question is whether the OCCA's determination of the issue constituted an unreasonable application of Supreme Court law. See 28 U.S.C. § 2254(d)(1); Williams, 529 U.S. at 413. This Court concludes it was.

The sealed mental health records consist of portions of the reports of Frank H. Krause, Ed.D., HSPP, CSP, from his examinations and testing of Ms. Tackett on five different occasions during October and November 2001. These records reveal that, as of approximately eight months after the crimes and a little more than a year before trial, Ms. Tackett was suffering from severe mental illness. This mental illness is of the type and severity that other courts have recognized would likely have an impact on a witness's veracity and credibility. See Robinson, 583 F.3d at 1272; Butt, 955 F.2d at 82-83; Lindstrom, 698 F.2d at 1160; Hargrove, 382 Fed. Appx. at 776. Likewise, the records warned that Ms. Tackett suffered from memory deficits, poor judgment, trouble distinguishing reality from fantasy, was manipulative and was potentially a danger to others. See Dkt. # 101, State's In Camera Ex. 1 (filed under seal). Details regarding the records are provided in the sealed order. See Dkt. # 100.

The OCCA's determination of this issue was an unreasonable application of clearly established federal law in two respects. First, the OCCA's determination that the sealed material contained nothing favorable to Browning was an unreasonable application of Supreme Court law to the facts of this case. There is no reasonable argument or theory that could support the OCCA's conclusion that the sealed material contained nothing favorable to Browning's defense. Moreover, no fairminded jurist could review the sealed material and conclude the sealed material was not favorable to Browning. Richter, 131 S.Ct. at 786. The sealed mental health records reflect that Ms.

13

Tackett, the prosecution's key witness, suffered from severe mental illness which could affect her ability to recount events accurately and she was also prone to manipulate and blame others. The sealed mental health records also contain information that could support Browning's theory that Ms. Tackett participated in the crimes with Pethel. This evidence is clearly both favorable impeachment and exculpatory evidence.

Second, the OCCA's conclusion that the sealed mental health records contain nothing material either to guilt or punishment was an unreasonable application of Supreme Court law to the facts of this case. Had the trial court ordered the disclosure of Ms. Tackett's mental health records prior to his trial, Browning undoubtedly would have been able to cross-examine her with the content to create doubt as to her ability to perceive and tell the truth regarding his involvement in the crimes. In weighing the materiality of the records, the Court notes that in Browning's trial, Ms. Tackett was not only the sole eyewitness but she was also a surviving victim. Her testimony was the only testimony directly linking Browning to the crime scene and the crimes. The guilty verdict in this case depended on Ms. Tackett's testimony – her "credibility was of paramount concern." See Robinson, 583 F.3d at 1271 (citing United States v. Payne, 63 F.3d 1200, 1210 (2d Cir. 1995) ("In general, impeachment evidence has been found to be material where the witness at issue supplied the only evidence linking the defendant(s) to the crime.")).

Respondent argues that Ms. Tackett's testimony was corroborated by other evidence at trial. See Dkt. # 103 at 5. Indeed, her testimony regarding the clothing Browning was wearing on the date of the crimes was corroborated, see Tr. Vol. VII at 1349, Tr. Vol. IX at 1774, and other witnesses testified that Browning was with Pethel before and after the crimes, Tr. Vol. IX at 1670-1672, 1688-1690; Tr. Vol. XII at 2321-22. However, this corroborated portion of Ms. Tackett's testimony is

14

not disputed by Browning. In contrast, Ms. Tackett's testimony regarding Browning's involvement in the crimes was not corroborated. It is that testimony that formed the foundation of the prosecution's case. In <u>Bagley</u>, the Supreme Court noted: "If the testimony that might have been impeached is weak and also cumulative, corroborative, or tangential, the failure to disclose the impeachment evidence could conceivably be held harmless. But when the testimony is the start and finish of the prosecution's case, and is weak nonetheless, quite a different conclusion must necessarily be drawn." 473 U.S. at 689.

Respondent next asserts that Ms. Tackett's mental illness was not very severe as evidenced by the medication she was prescribed by Dr. Krause. <u>See</u> Dkt. # 101 at 14. To the contrary, other information in the sealed records clearly belies that proposition. Moreover, this allegation is not supported by any medical or psychiatric evidence. <u>See</u> <u>id.</u> generally.

In addition, Respondent contends there is no evidence that Ms. Tackett was suffering from the symptoms mentioned in the sealed records at the time of the murders or at the time of her trial testimony. This argument is unpersuasive because, due to the suppression of the sealed documents, Browning was deprived of the opportunity to develop this line of impeachment. The Court cannot say what additional impeachment evidence the defense may have been able to discover had the defense had access to the sealed mental health records. <u>See</u> <u>Robinson</u>, 583 F.3d at 1273.[9] Respondent's contention that Ms. Tackett's mental condition was caused by the crimes fails for the

---

[9] Notably, evidence in the record developed after trial indicates that Ms. Tackett saw other mental health professionals at times even more proximate to the trial which began in January 2003. <u>See</u> Affidavit of Steve Ellis, Ex. 11, Application for Evidentiary Hearing, Case No. D-2003-63 (indicating that Ms. Tackett suffered from mental problems, saw a "shrink" and "had to take medication to stay sane" during the time Mr. Ellis and Ms. Tackett lived together from March 2002 until November 2002).

same reasons. Moreover, in the sealed mental health records, Dr. Krause does not at any point link Ms. Tackett's mental disease to the murders. Further, even if he had reached such a conclusion, the sealed records still show that Ms. Tackett suffered from severe mental illness which may have dramatically impaired her ability to perceive and tell the truth.

In the instant case, there was no available impeachment evidence that in any way approached the evidence suppressed in the sealed mental health records. The evidence contained in the sealed material was not cumulative. Browning argues that Ms. Tackett not only linked him to the crimes, she manufactured the complete story about his involvement in those crimes. He argues that the only way he could prove his innocence or create a reasonable doubt was to point out inconsistencies and false segments of her testimony to give the jury cause to believe that she lied or manufactured the evidence regarding his involvement. See Dkt. # 102 at 12. The prosecution and the OCCA painted Ms. Tackett as an immature young victim with learning disabilities rather than a manipulative person suffering from severe mental illness. See Browning, 134 P.3d at 832; Tr. Vol. XIII at 2431-32. The disclosure of the sealed mental health records could reasonably have changed the way the jury viewed Ms. Tackett's credibility and the motive behind her testimony.

Moreover, the record reveals that Ms. Tackett made inconsistent statements relating to the events surrounding the crimes.[10] Additionally, Ms. Tackett admitted on the stand to lying to law

---

[10] By way of example, at trial and on several dates prior to trial, Ms. Tackett testified that Shane Pethel was the shooter. See Exhibit 3A at 51, Application for Evidentiary Hearing, Case No. D-2003-363; Tr. Vol. VIII at 1402-04, 1583; Tr. Vol. IX at 1642. However, on the day of the incident she indicated that Browning was the shooter. See Exhibits 1, 2A, 2B, and 2C, Application for Evidentiary Hearing, Case No. D-2003-363. The record also reflects that Ms. Tackett made inconsistent statements regarding whether or not she knew Pethel prior to the day of the crimes. See Exhibit 1B at 6, Application for Evidentiary Hearing, Case No. D-2003-363; Tr. 5/31/01 at 53, 55; Tr. Vol. VIII at 1416, 1507.

enforcement in order to "get them [Browning and Pethel] in more trouble." Tr. Vol. VIII at 1416; Tr. Vol. IX at 1630-34.[11] Thus, her credibility and veracity were already shown to be suspect. Ms. Tackett's mental health records reveal that she "exhibited a pronounced disposition to lie" and that she suffered from severe mental illness that potentially "dramatically impaired her ability to perceive and tell the truth." See Butt, 955 F.2d at 82-83.

To establish that the withheld evidence was material, Browning need not show, as Respondent has argued, that the withheld records would have "resulted ultimately in [his] acquittal." Kyles, 514 U.S. at 434. He need only show that the withheld records "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Strickler, 527 U.S. at 290. The Court confirms its previous finding that the withheld evidence was material to the fairness of Browning's trial. If Ms. Tackett's testimony were sufficiently impeached, it would have undermined the prosecution's entire case. The evidence of severe mental illness affecting Ms. Tackett's veracity and ability to recount events accurately surely may have created sufficient doubts as to Browning's involvement in the crimes in the minds of at least some of the jurors, particularly in the absence of other evidence linking him to the actual crimes. See Robinson, 583 F.3d at 1275 (evidence found to be material because sole witness to place the defendant in possession of the firearm); see also Payne, 63 F.3d at 1210 ("In general, impeachment evidence has been found to be material where the witness at issue supplied the only evidence linking the defendant(s) to the crime."). There exists "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." See Ritchie, 480

---

[11] Ms. Tackett admitted at trial that she lied to investigators numerous times by telling them that Browning had killed her birds by setting them on fire and forcing her to watch and that Shane Pethel shot the family's dogs.

U.S. at 57. The OCCA's decision was objectively unreasonable as a fair minded jurist could determine the withheld favorable evidence put the whole case in such a different light as to undermine confidence in the verdict. Strickler, 527 U.S. at 290; Richter, 131 S.Ct. at 786.

Accordingly, this Court finds that the OCCA's determination was an unreasonable application of clearly established federal law, as established by the Supreme Court in Brady, Bagley, Ritchie and their progeny. See 28 U.S.C. § 2254(d)(1). As a result, Browning is entitled to a conditional grant of habeas corpus relief on ground seven of his Amended Petition.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The 28 U.S.C. § 2254 Amended Petition for Writ of Habeas Corpus (Dkt. # 79) is **conditionally granted**. The writ of habeas corpus shall issue unless the State of Oklahoma commences new trial proceedings as to Browning's convictions in Tulsa County District Court, Case No. CF-2001-1098, within 180 days of the entry of this order.

2. The original Petition for Writ of Habeas Corpus (Dkt. # 32) is **denied** as moot.

**SO ORDERED** this 30th day of June, 2011.

_____
UNITED STATES DISTRICT JUDGE